# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PAUL SIFRE, | |
| Plaintiff, | Case No.: 3:14-cv-00060-RCJ-WGC |
| vs. | **ORDER** |
| CITY OF RENO et al., | |
| Defendants. | |

This case arises out of alleged retaliation against a police sergeant by his superiors based on protected speech.  Pending before the Court is a Motion to Dismiss (ECF No. 9).  For the reasons given herein, the Court grants the motion in part.

## I.      FACTS AND PROCEDURAL HISTORY

Plaintiff is Reno Police Department ("RPD") Sergeant Paul Sifre. (*See* Am. Compl. ¶ 2, Apr. 7, 2014, ECF No. 8).  Defendants are the City of Reno, RPD Chief Steve Pitts, RPD Deputy Chief Tom Robinson, RPD Deputy Chief Dave Evans, and RPD Lieutenant Rob Van Diest. (*Id.*).  Plaintiff has brought a single claim against Defendants pursuant to 42 U.S.C. § 1983 for First Amendment retaliation. (*See id.* 7–8).

Plaintiff alleges that on January 3, 2011, Van Diest ordered Plaintiff to falsify a statement concerning non-party RPD officer Chris Good. (*See id.* ¶ 4).  When Plaintiff refused, Van Diest began to harass Plaintiff. (*Id.* ¶¶ 6–7).

On January 29, 2011, Van Diest "ordered Plaintiff to stay away from Plaintiff's own team." (*Id.* ¶ 14).  When Plaintiff refused, Van Diest told Plaintiff he would receive a negative remark concerning his refusal in his performance evaluation. (*Id.*).

In May 2011, Plaintiff was the subject of an internal affairs investigation, the nature of which Plaintiff does not allege. (*See id.* ¶ 15).  Chief Pitts sustained two of the charges, despite a review board's unanimous vote not to sustain any charges, and ordered Plaintiff into a performance improvement program. (*Id.* ¶¶ 16–18).  When they learned Plaintiff intended to appeal, Pitts and Evans reduced the discipline to training to avoid an appeal. (*See id.* ¶ 19).  As a result of the internal affairs investigation, in late May or early June of 2011, two sergeants who Plaintiff does not identify recommended that Plaintiff volunteer to leave his graveyard shift because Defendants intended to remove him from it anyway. (*See id.* ¶ 24).  Plaintiff changed shifts on June 3, 2011. (*Id.* ¶ 26).

In May 2011, Van Diest also ordered Plaintiff to keep his team out of the downtown area. (*Id.* ¶ 21).  Plaintiff protested. (*Id.*).

In May 2011, Plaintiff was passed over for promotion despite being ranked fourth on a promotion test "and should have been selected had Defendants followed proper procedures." (*Id.* ¶ 22).

In June 2011, Plaintiff applied for the position of SET Team Sergeant. (*Id.* ¶ 27). Although he was the only eligible applicant when the position was announced, Evans changed

department policy to make other sergeants eligible for the position so that Plaintiff would not be selected. (*Id.* ¶¶ 27–28).

In July 2011, Plaintiff was advised that Defendants had ordered Plaintiff not to have any more "ride-alongs" because the females who rode along with Plaintiff were "too good looking." (*Id.* ¶ 29). Plaintiff's protests to his superiors fell on deaf ears, and eventually non-party Deputy Chief Whan changed department policy to limit "ride-alongs" to family members—an order referred to as "another Sifre rule." (*Id.* ¶¶ 30–32).

Plaintiff applied for Lieutenant again in May 2012. (*Id.* ¶ 35). Non-party Sergeant Donohue was selected over Plaintiff, despite being ranked sixth or seventh on the promotion test. (*Id.*). Donohue was thereby the second sergeant promoted to lieutenant off of the list mentioned, *supra*, on which Plaintiff ranked fourth. (*Id.*). In July 2012, non-party Sergeant Katre was promoted, despite being ranked sixth or seventh on the list. (*Id.*). In September 2012, non-party Sergeant Burfield was the fourth sergeant promoted off of the list. (*Id.*).[1]

In December 2012, non-party Deputy Chief Venzon announced that the lieutenant's list would be vacated and a new test administered, despite Evans's prior assurance that the previous list would remain in effect for two years. (*Id.* ¶ 39). Before the new lieutenant's test was administered, non-party Officer Kellie Fox found copies of the test questions in a copier at the RPD main station. (*Id.* ¶ 40). Plaintiff reported the incident to Pitts and asked him to investigate. (*Id.*). Pitts said he would consult with Civil Service Director Bailey. (*Id.*). Bailey claimed the questions were accidentally printed to the main station a week after the test had occurred. (*See id.*

---

[1] Plaintiff does not allege Burfield's position on the list, but the allegations as a whole indicate that four sergeants were promoted over Plaintiff despite Plaintiff being fourth on the list, which appears improper if one assumes that promotions are to occur in order of merit according to the list and that Plaintiff was not barred from promotion by the aforementioned disciplinary actions or for some other reason.

¶ 41).[2]  An RPD technology expert indicated to Plaintiff that such a printing error could not have occurred. (*Id.* ¶ 42).  Plaintiff filed a formal complaint with the Civil Service Commission concerning the apparent leak of the test questions but is unaware of any further investigation. (*Id.* ¶ 43).

In February 2013, Plaintiff applied for the position of training supervisor. (*Id.* ¶ 44). Although he was more qualified than the unidentified person selected, he was denied the position because he had challenged the lieutenant selection process. (*Id.*).  Plaintiff later applied for a special assignment to the Gang Unit but was denied, despite being more qualified than the unidentified person selected. (*Id.* ¶ 45).

Plaintiff sued Defendants in this Court pursuant to 42 U.S.C. § 1983 for First Amendment retaliation.  Defendants moved to dismiss.  Plaintiff filed the Amended Complaint ("AC").  Defendants have now moved to dismiss the AC for failure to exhaust administrative remedies and failure to state a claim.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the

---

2 This explanation is incongruous with the allegation that Officer Fox had found the questions printed *before* the test had been administered.

defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary

1    judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

2    of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

3    *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

4    considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

5    summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

6    2001).

7    **III.    ANALYSIS**

8            In order to state a claim against a government employer for violation of
     the First Amendment, an employee must show (1) that he or she engaged in
9    protected speech; (2) that the employer took "adverse employment action"; and
     (3) that his or her speech was a "substantial or motivating" factor for the adverse
10   employment action.

11   *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).  Not all speech is protected,

12   however.  "[W]hile the First Amendment invests public employees with certain rights, it does not

13   empower them to constitutionalize the employee grievance." *Desrochers v. City of San*

14   *Bernardino*, 572 F.3d 703, 718 (9th Cir. 2009) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420

15   (2006)).  The Supreme Court has recently reiterated the standard:

16           When a public employee sues a government employer under the First
     Amendment's Speech Clause, the employee must show that he or she spoke as a
17   citizen on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 147, 103
     S. Ct. 1684, 75 L. Ed. 2d 708 (1983).  If an employee does not speak as a citizen,
18   or does not address a matter of public concern, "a federal court is not the
     appropriate forum in which to review the wisdom of a personnel decision taken
19   by a public agency allegedly in reaction to the employee's behavior." *Ibid.*  Even
     if an employee does speak as a citizen on a matter of public concern, the
20   employee's speech is not automatically privileged.  Courts balance the First
     Amendment interest of the employee against "the interest of the State, as an
21   employer, in promoting the efficiency of the public services it performs through
     its employees." *Pickering v. Board of Ed. of Township High School Dist. 205,*
22   *Will Cty.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

23

24

*Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011); *see also id.* at 2500–01 (holding that the analysis under the Petition Clause mirrors the analysis under the Speech Clause).  Analysis of a First Amendment retaliation claim consists of:

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Desrochers*, 572 F.3d at 708–09 (quoting *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). If the speech did not touch on a matter of public concern, the inquiry ends. *See id.* at 709. Plaintiff bears the burden of showing that his speech addressed an issue of public concern, based on "the content, form, and context of a given statement, as revealed by the whole record." *See id.* (quoting *Connick*, 461 U.S. at 147–48).  "[T]he essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Id.* (citing *Connick*, 461 U.S. at 147).

In *Desrochers*, four sergeants of the San Bernardino Police Department ("SBPD") filed an informal grievance about their Lieutenant. *Id.* at 705.  When the Lieutenant found out about the grievance, he requested a transfer, which was granted, and the aggrieved sergeants had little to no contact with the Lieutenant thereafter. *Id.* at 706.  Two of the sergeants resolved their grievance, but Sergeants Desrochers and Lowes went on to file a formal grievance against the Lieutenant, the Chief of Police, and the Captain who had adjudicated the informal grievance. *Id.* The formal grievance, which was supported by declarations describing several incidents, essentially alleged that the Lieutenant was a bully who had created a "hostile work environment" and that neither the Captain nor the Chief of Police had taken appropriate steps to remedy the

situation. *See id.* at 706–07.  The Captain denied the formal grievance. *Id.* at 707.  Desrochers and Lowes then filed a complaint with the City's Human Resources Department ("HR") against the Lieutenant, the Lieutenant's replacement, the Captain, and the Chief of Police, and HR eventually denied the complaint. *Id.* at 708.  Desrochers was transferred from the Homicide Unit to the Robbery Unit, which he viewed as a demotion, and Lowes had become the subject of an internal affairs investigation based on an arrest he had made, resulting in a two-week suspension. *Id.* at 704.

Desrochers and Lowes filed a § 1983 action for First Amendment retaliation, as well as several state law claims, but the district court granted summary judgment to the defendants because the speech at issue did not address matters of public concern. *Id.* at 708.  The Court of Appeals affirmed, noting that "the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest," which is a question of law upon which a plaintiff bears the burden. *Id.* (citations omitted).  The line is between "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" on the one hand, *see id.* at 710 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)), and "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies'" on the other, *see id.* (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quoting *McKinley*, 705 F.2d at 1114)).  The court specifically rejected the plaintiffs' attempt to characterize their concerns about their supervisors' competence and the morale of the police force generally as issues of public concern as opposed to internal power struggles. *See id.* at 710–11.

1       The Court made several further points.  First, it is the content of the speech that matters,

2   not a plaintiff's "post hoc characterizations" of the grievance. *Id.*  Second, conclusory allegations

3   of the "negative" effects of a supervisor's behavior are insufficient; a plaintiff must allege

4   concrete negative results. *Id.* at 712–13.  Third, the Court noted that *Desrochers*'s claim that his

5   speech was an issue of public concern was seriously undermined by the fact his grievance was

6   purely internal. *Id.* at 714–15.  The court summarized its holding by stating that "while the First

7   Amendment invests public employees with certain rights, it does not empower them to

8   constitutionalize the employee grievance." *Id.* at 718 (quoting *Garcetti*, 547 U.S. at 420).  By

9   contrast, where an employee's speech is in the form of public trial testimony, for example, the

10  employee is protected from retaliation. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091,

11  1104 (9th Cir. 2011) (distinguishing *Desrochers*).

12      This is a *Desrochers*-type case, and it appears for the most part beyond genuine dispute

13  that Plaintiff's concern was over the way his superiors treated him, evaluated his performance,

14  and disciplined him, not over any supposed effect these activities had on the public at large.

15  Plaintiff's grievances were internal complaints within RPD concerning the application of job

16  performance standards to Plaintiff.  The single exception is Plaintiff's alleged complaint to the

17  Civil Service Commission—an external agency—concerning the apparent leak of the questions

18  for the lieutenant's test.  The Court finds those allegations sufficient to state a retaliation claim.

19  A report about a potential leak of promotion test questions, particularly when made to an external

20  agency charged with administering city employment issues, is better characterized as a matter of

21  public concern than an internal grievance, regardless of the fact that Plaintiff himself was

22  personally interested in the matter or that he happened to discover the alleged impropriety

23  because of his official position, because he had no official duty to investigate those kinds of

24

1    incidents.  But apart from that report, Plaintiff's reports through his chain of command about

2    issues personal to him were precisely the kind of internal employee grievances that do not

3    qualify as a matter of public concern. *See Guarnieri*, 131 S. Ct. at 2501 ("A petition filed with an

4    employer using an internal grievance procedure in many cases will not seek to communicate to

5    the public or to advance a political or social point of view beyond the employment context.");

6    *Desrochers*, 572 F.3d at 710.  Internal grievances concerning an employee's particular situation

7    do not constitute speech on a matter of public concern simply because the public might be

8    interested in how government officers are performing their duties. *Id.*  "The right of a public

9    employee under the Petition Clause is a right to participate as a citizen, through petitioning

10   activity, in the democratic process.  It is not a right to transform everyday employment disputes

11   into matters for constitutional litigation in the federal courts." *Id.*  For these reasons, the Court

12   dismisses the sole claim of the complaint, except as to the report to the Civil Service

13   Commission, for failure to state a claim.  The First Amendment retaliation sufficiently pled

14   therefore consists only of the denial of Plaintiff's application for training supervisor and special

15   assignment to the Gang Unit based on Plaintiff's complaint to the Civil Service Commission

16   about the leak of questions on the lieutenant's test.

17          The Court also dismisses as against the City of Reno, with leave to amend.  "A plaintiff

18   seeking to establish municipal liability must demonstrate, moreover, that the government 'had a

19   deliberate policy, custom, or practice that was the 'moving force' behind the constitutional

20   violation he suffered.'" *Galen v. County of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting

21   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)).  Plaintiff has alleged no facts

22   indicating a pattern or practice of First Amendment retaliation by the City of Reno.  Municipal

23   liability can be shown by a single act, but only if the act was done by one with final

24

policymaking authority under state law. *See Christie v. Iopa*, 176 F.3d 1231, 1235–37 (9th Cir. 1999). Plaintiff alleges Pitts is a final policymaker. But the Court of Appeals has made clear that a supervisor, no matter how high, is not a "final policymaker" for the purposes of municipal liability under § 1983 unless the lawmaking authority has delegated to him more than discretion to act under policies, but discretion to set the policies. *See id.* Plaintiff's allegations relevant to municipal liability are conclusory in this regard. He does not allege who actually made the decision to deny his application for training supervisor or for special assignment to the Gang Unit. And even assuming this person were Pitts, Plaintiff does not allege whether the Reno City Council has delegated only discretion to act versus final policymaking authority to Pitts with respect to the assignments of officers.

The final questions are whether Plaintiff is required to exhaust administrative remedies with respect to the surviving aspect of his § 1983 claim against the individual Defendants, and, if so, whether he has done so. The Court finds that Plaintiff was not required to exhaust any administrative remedies before bringing the present § 1983 action. *See Porter v. Nussle*, 534 U.S. 516, 523 (2002) (citing *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982)). Defendants argue that Plaintiff must follow the grievance procedure of his Collective Bargaining Agreement ("CBA"). But Plaintiff alleges no breach of any CBA, and statutory rights can only be subjected to arbitration upon a clear and unmistakable waiver in a CBA. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998). Defendants produce no evidence of such a waiver. Article 27 of the CBA attached to the first motion to dismiss covers grievance procedures and nowhere mentions § 1983 or even "statutory rights" generally. In fact, section 27(a) explicitly limits the scope of the grievance article to "disputes concerning the interpretation, application, and enforcement of the express provisions of this agreement."

1

**CONCLUSION**

2      IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 9) is GRANTED IN

3   PART and DENIED IN PART.  The Complaint is DISMISSED as against the individual

4   Defendants except insofar as it is based on the alleged retaliation for Plaintiff's complaint to the

5   Civil Service Commission.  The City of Reno is DISMISSED as a Defendant, with leave to

6   amend the allegations concerning municipal liability.

7      IT IS SO ORDERED.

8   Dated this 26th day of August, 2014.

9

10   _____
        ROBERT C. JONES
        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24