UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| PAUL SIFRE,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF RENO et al.,<br><br>        Defendants. | Case No.: 3:14-cv-00060-RCJ-WGC<br><br>**ORDER** |

This case arises out of alleged retaliation against a police sergeant by his superiors based on protected speech. Pending before the Court is a Motion to Dismiss (ECF No. 39). For the reasons given herein, the Court denies the motion.

I.  **FACTS AND PROCEDURAL HISTORY**

Plaintiff is Reno Police Department ("RPD") Sergeant Paul Sifre. (*See* Am. Compl. ¶ 2, Apr. 7, 2014, ECF No. 8). Defendants are the City of Reno, RPD Chief Steve Pitts, RPD Deputy Chief Tom Robinson, RPD Deputy Chief Dave Evans, and RPD Lieutenant Rob Van Diest. (*Id.*). Plaintiff has brought a single claim against Defendants pursuant to 42 U.S.C. § 1983 for First Amendment retaliation. (*See id.* 7–8).

Plaintiff alleges that on January 3, 2011, Van Diest ordered Plaintiff to falsify a statement concerning non-party RPD officer Chris Good. (*See id.* ¶ 4). When Plaintiff refused, Van Diest

began to harass Plaintiff. (*Id.* ¶¶ 6–7). On January 29, 2011, Van Diest "ordered Plaintiff to stay away from Plaintiff's own team." (*Id.* ¶ 14). When Plaintiff refused, Van Diest told Plaintiff he would receive a negative remark concerning his refusal in his performance evaluation. (*Id.*).

In May 2011, Plaintiff was the subject of an internal affairs investigation, the nature of which Plaintiff does not allege. (*See id.* ¶ 15). Chief Pitts sustained two of the charges, despite a review board's unanimous vote not to sustain any charges, and ordered Plaintiff into a performance improvement program. (*Id.* ¶¶ 16–18). When they learned Plaintiff intended to appeal, Pitts and Evans reduced the discipline to training to avoid an appeal. (*See id.* ¶ 19). As a result of the internal affairs investigation, in late May or early June of 2011, two sergeants who Plaintiff does not identify recommended that Plaintiff volunteer to leave his graveyard shift because Defendants intended to remove him from it anyway. (*See id.* ¶ 24). Plaintiff changed shifts on June 3, 2011. (*Id.* ¶ 26).

In May 2011, Van Diest also ordered Plaintiff to keep his team out of the downtown area. (*Id.* ¶ 21). Plaintiff protested. (*Id.*). In May 2011, Plaintiff was passed over for promotion despite being ranked fourth on a promotion test "and should have been selected had Defendants followed proper procedures." (*Id.* ¶ 22). In June 2011, Plaintiff applied for the position of SET Team Sergeant. (*Id.* ¶ 27). Although he was the only eligible applicant when the position was announced, Evans changed department policy to make other sergeants eligible for the position so that Plaintiff would not be selected. (*Id.* ¶¶ 27–28). In July 2011, Plaintiff was advised that Defendants had ordered Plaintiff not to have any more "ride-alongs" because the females who rode along with Plaintiff were "too good looking." (*Id.* ¶ 29). Plaintiff's protests to his superiors fell on deaf ears, and eventually non-party Deputy Chief Whan changed department policy to

limit "ride-alongs" to family members—an order referred to as "another Sifre rule." (*Id.* ¶¶ 30–32).

Plaintiff applied for Lieutenant again in May 2012. (*Id.* ¶ 35). Non-party Sergeant Donohue was selected over Plaintiff, despite being ranked sixth or seventh on the promotion test. (*Id.*). Donohue was thereby the second sergeant promoted to lieutenant off of the list mentioned, *supra*, on which Plaintiff ranked fourth. (*Id.*). In July 2012, non-party Sergeant Katre was promoted, despite being ranked sixth or seventh on the list. (*Id.*). In September 2012, non-party Sergeant Burfield was the fourth sergeant promoted off of the list. (*Id.*).[1]

In December 2012, non-party Deputy Chief Venzon announced that the lieutenant's list would be vacated and a new test administered, despite Evans's prior assurance that the previous list would remain in effect for two years. (*Id.* ¶ 39). Before the new lieutenant's test was administered, non-party Officer Kellie Fox found copies of the test questions in a copier at the RPD main station. (*Id.* ¶ 40). Plaintiff reported the incident to Pitts and asked him to investigate. (*Id.*). Pitts said he would consult with Civil Service Director Bailey. (*Id.*). Bailey claimed the questions were accidentally printed to the main station a week after the test had occurred. (*See id.* ¶ 41).[2] An RPD technology expert indicated to Plaintiff that such a printing error could not have occurred. (*Id.* ¶ 42). Plaintiff filed a formal complaint with the Civil Service Commission concerning the apparent leak of the test questions but is unaware of any further investigation. (*Id.* ¶ 43).

---

1 Plaintiff does not allege Burfield's position on the list, but the allegations as a whole indicate that four sergeants were promoted over Plaintiff despite Plaintiff being fourth on the list, which appears improper if one assumes that promotions are to occur in order of merit according to the list and that Plaintiff was not barred from promotion by the aforementioned disciplinary actions or for some other reason.
2 This explanation is incongruous with the allegation that Officer Fox had found the questions printed *before* the test had been administered.

In February 2013, Plaintiff applied for the position of training supervisor. (*Id.* ¶ 44). Although he was more qualified than the unidentified person selected, he was denied the position because he had challenged the lieutenant selection process. (*Id.*). Plaintiff later applied for a special assignment to the Gang Unit but was denied, despite being more qualified than the unidentified person selected. (*Id.* ¶ 45).

Plaintiff sued Defendants in this Court under 42 U.S.C. § 1983 for First Amendment retaliation. Defendants moved to dismiss. Plaintiff filed the Amended Complaint ("AC"). Defendants moved to dismiss the AC for failure to exhaust administrative remedies and failure to state a claim. The Court granted the motion in part, dismissing the claims except for the First Amendment retaliation claim under § 1983 insofar as it was based on the alleged retaliation for Plaintiff's complaint to the Civil Service Commission, i.e., the denial of his applications for assignment as a training supervisor and assignment to the Gang Unit. The Court also dismissed the City of Reno as a Defendant, with leave to amend the allegations concerning municipal liability. Plaintiff filed the Second Amended Complaint ("SAC"). In the SAC, Plaintiff alleges the incident concerning the leaked test questions, (Second Am. Compl. ¶ 5, ECF No. 36), Plaintiff's complaint to the Civil Service Commission, (*id.* ¶ 6), and Plaintiff's denials for assignment to training supervisor and the Gang Unit, (*id.* ¶¶ 8–9). He also alleges that those denials were in retaliation for his report to the Civil Service Commission. (*Id.* ¶ 7). In addition, paragraph seven includes the following language relevant to the *Monell* claim against the City:

> Plaintiff is informed and believes that this protected activity caused Defendants to implement an unwritten policy, promulgated by Pitts, to be followed by Lieutenants in making selections for special assignments, that Plaintiff was not to be selected. In fact, Plaintiff was informed on more than one occasion, that this policy was being referred to as the "Sifre Rule" - i.e., you complain, you don't get promoted. As a result of this deliberately chosen policy, Plaintiff was not and will not be selected for special assignments.

(*Id.*).  Defendants have moved to dismiss.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but

also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III.     ANALYSIS

The Court denies the motion with respect to the individual Defendants. The Court has already ruled that the AC was sufficient to state a First Amendment retaliation claim with respect to the individual Defendants based on the alleged retaliation for reporting the leak of the test questions to the Civil Service Commission. The SAC is also sufficient in that regard. Defendants are wrong that Plaintiff has made no allegations indicating a causal nexus between his report to the Civil Service Commission and the denial of his applications. He has specifically

alleged that he "was informed" (he does not say by whom, but Rule 9(b) does not apply here) that he had not been selected for the training supervisor and Gang Unit assignments because Chief Pitts had told the lieutenants in the department to enforce a "Sifre rule," under which those who complained, such as Plaintiff, would not be promoted. (Second Am. Compl. ¶ 7). Plaintiff has therefore made a good faith allegation of a causal nexus between his complaint to the Civil Service Commission and the denial of his applications. The remaining question is which of the individual Defendants personally took part in the decision to deny Plaintiff the assignments (in addition to Pitts, who allegedly commanded the denials). The Court will leave that for summary judgment. Plaintiff implies in the SAC that all of the individual Defendants were part of that decision because he accuses "Defendants" collectively of causing the denials. (*Id.* ¶¶ 7, 12).

It is a closer question whether the *Monell* claim against the City has been sufficiently stated. In a *Monell* claim, there are three ways to establish municipal liability under § 1983: (1) by showing a longstanding practice or custom by the municipality; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984–85 (9th Cir. 2002). Plaintiff alleges both that Pitts is a "final policymaker with the City of Reno as it relates to the police department," (Second Am. Compl. ¶ 13), and that "[t]he City of Reno also has a custom that involves a pattern of repeated retaliation against personnel who exercise their right to free speech . . . .," (*id.* ¶ 14).

In support of the "final policymaker" theory, Plaintiff cites to *Paiva v. City of Reno*, 939 F. Supp. 1474 (D. Nev. 1996) (Reed, J.), in which Judge Reed noted that "[w]ithout question the

chief of a metropolitan police department is a maker of government policy with respect to police procedures." *Id.* at 1490 (citing *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)).  Plaintiff also notes that under the City Charter, the City Council appoints the City Manager and the Chief of Police, that the Chief of Police performs duties as designated by the City Manager, and that on information and belief the City Manager has delegated to the Chief of Police all duties concerning the supervision of subordinate officers, including assignment issues. The Court finds that to be a fair (and almost certainly true) inference, making Plaintiff's allegations in this regard entirely plausible.  It is very unlikely that Pitts did not have final policymaking authority over officer assignments, and Plaintiff need only allege it at this stage, which he has.

In support of the "custom" theory, Plaintiff points to the cases of Laura Conklin, No. 3:08-cv-452, and Vincent Slagel, No. 3:07-cv-60513.  The Conklin case provides no support as an example of First Amendment retaliation by the City.  In that case, the Court of Appeals affirmed Judge Hicks's grant of summary judgment against the First Amendment retaliation claim, and it reversed and remanded only the grant of summary judgment against a Fourteenth Amendment sex discrimination claim (which was later voluntarily dismissed before adjudication).  No litigant named Slagel appears to have filed any case in this District or in the Second Judicial District Court in Washoe County.  The case number appears to be a Court of Appeals number, but even a search of that court's docket for that case number (or for any case with a party named "Slagel" filed in 2007) returns nothing.

In conclusion, Plaintiff has sufficiently alleged a causal nexus between his report to the Civil Service Commission of the leaked lieutenant's test questions and the denial of his applications for training supervisor and the Gang Unit, and he has sufficiently alleged that Chief

Pitts ordered these denials pursuant to his authority as a final policy maker of the City for the purposes of a *Monell* claim.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 39) is DENIED.

IT IS SO ORDERED.

Dated this 18th day of November, 2014.

_____
ROBERT C. JONES
United States District Judge